The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. As aforementioned, all stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A copy of a Form 21 marked as stipulated exhibit 1 was received into evidence. (one page)
3. Medical records from Duke University Medical Center marked as stipulated exhibit 2 were received into evidence. (forty pages)
4. Medical records from Cape Fear Memorial Hospital marked as stipulated exhibit 3 were received into evidence. (four pages)
5. Medical records from North Carolina Neuropsychiatry marked as stipulated exhibit 4 were received into evidence. (thirty-three pages)
6. Medical records from Durham Clinic PA marked as stipulated exhibit 5 were received into evidence. (forty-five pages)
7. Medical records from the IBM medical department marked as stipulated exhibit 6 were received into evidence. (eleven pages)
8. A letter dated May 10, 1994 from Martha Barr to attorney James Walker marked as stipulated exhibit 7 was received into evidence. (one page)
9. A form 24 application approved on March 31, 1994 marked as stipulated exhibit 8 was received into evidence. This application includes a one page job description and a letter dated February 23, 1994 from Dr. Friedman to Ms. Watkins. (seven pages)
10. A set of documents supporting plaintiff's notice of appeal marked as stipulated exhibit 9 were received into evidence. (nine pages)
11. Subsequent to the initial hearing, the parties submitted stipulated medical records including an August 14, 1995 letter from Dr. Friedman. These records were marked as stipulated exhibit 10 and were received into evidence. (seventeen pages)
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the compensable injury by accident, plaintiff was employed as an intern while going to college to obtain an undergraduate degree. Plaintiff's job duties included handling reject parts.
2. On April 9, 1991, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with the defendant-employer when he slipped on some water and hit his head on a cement floor.
3. Prior to the injury by accident on April 9, 1991, plaintiff had a pre-existing condition that involved a malformation of the brain in the area where the brain enters a hole into the spinal cord. This condition, described as a "Chiari malformation," is extra brain tissue from the cerebellum that pinches the spinal cord. This pre-existing condition was asymptomatic prior to the April 9, 1991 injury by accident.
4. As a result of the April 9, 1991 compensable injury by accident, plaintiff's preexisting Chiari malformation was exacerbated to the extent that plaintiff began to suffer headaches.
5. As a result of the April 9, 1991 compensable injury by accident, plaintiff sustained a post-concussive syndrome with associated problems of neuropsychological dysfunction. These problems include headaches and occasional blackouts.
6. On May 25, 1993, Dr. Allan Friedman, a neurosurgeon, performed surgery on the plaintiff. The plaintiff underwent a suboccipital craniectomy with a C1-2 laminectomy and decompression of a Chiari malformation with a dural graft.
7. In a letter dated February 23, 1994, Dr. Friedman informed the defendant-carrier that the plaintiff could perform the job duties outlined in a November 2, 1993 letter. The job description shown to Dr. Friedman was the position plaintiff held at the time of his April 9, 1991 injury by accident. The defendant-employer submitted this letter as well as a written job description to the Industrial Commission in order to obtain permission to terminate temporary total disability payments.
8. Plaintiff was not directly informed by Dr. Friedman that he had been released to return to work until April 25, 1994. Plaintiff was directly informed by Dr. Friedman on April 25, 1994 that he was released to return to work at a job that did not require driving or lifting over forty pounds. It is important to note here that Dr. Friedman took into consideration the totality of plaintiff's medical condition not only the Chiari malformation, when issuing this release. Plaintiff's former job did not require driving or lifting over forty pounds. Plaintiff has never at any time made any attempt to contact his former employer nor to return to his former job with those restrictions imposed by Dr. Friedman nor to attempt to seek any other employment after notification of this release on April 25, 1994. Plaintiff was represented by an attorney at this time who was made aware of the release. Further, plaintiff stated in his own words that despite a doctor's release, he would not go back to work as of the date of the initial hearing. (Tr., pp. 40-41).
10. Plaintiff was medically able to return to work as of February 23, 1994. Plaintiff's former job was still available to the plaintiff as of February 23, 1994, as well as by April 25, 1994, when he was told by Dr. Friedman that he was released with restrictions to return to work.
11. Plaintiff owns his own vehicle and has a valid North Carolina driver's license. At the time of the hearing, plaintiff was living in Wilmington, North Carolina. Plaintiff drives two and one half hours to three hours from Wilmington to Chapel Hill to receive physical therapy, which undermines plaintiff's contention that he is unable to drive to work due to blackouts.
12. As of August 1, 1995, plaintiff had reached maximum medical improvement with regard to his neck injury.
13. As a result of the April 9, 1991 compensable injury by accident, plaintiff sustained a twenty percent permanent partial disability to his neck.
14. As of May 31, 1995, plaintiff had reached maximum medical improvement with regard to the post concussive syndrome plaintiff sustained to his brain. Plaintiff continues to suffer from some headaches and blackouts, but not to the extent he is unable to drive . . . (See Finding of Fact 11).
15. As a result of the April 9, 1991 compensable injury by accident, plaintiff sustained a permanent disability to his brain.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff was justified in his refusal to return to work prior to being told directly by Dr. Friedman that plaintiff was released to return to work with restrictions. However, plaintiff was not justified in his refusal to return to work after Dr. Friedman, who released plaintiff based on his overall condition, directly communicated to the plaintiff that he was being released to return to work on April 25, 1994. N.C. Gen. Stat. § 97-32. Defendant-employer had an actual job available which was within his required physical restrictions. Further, plaintiff did not make any reasonable attempts to contact his former employer to return to his former job or to seek any employment after that date, despite release by his physician, and still maintains that he is completely unable to work.
2. Plaintiff is entitled to receive temporary total disability compensation at a rate of $141.69 per week for the time period beginning March 11, 1994 through April 25, 1994, the date of his unjustified refusal to return to work despite medical release and availability of employment. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive permanent partial disability compensation for sixty weeks at a compensation rate of $141.69 per week for the 20 percent permanent partial disability plaintiff has sustained to his neck. N.C. Gen. Stat. § 97-31 (23).
4. Plaintiff is entitled to receive $5,000 for the permanent injury to his brain. N.C. Gen. Stat. § 97-31 (24).
5. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief and/or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendants shall pay to the plaintiff temporary total disability compensation at a rate of $141.69 per week for the time period beginning March 11, 1994 through April 25, 1994. This amount has accrued and shall be paid in a lump sum subject to the attorney fee approved below.
2. Defendants shall pay to the plaintiff permanent partial disability compensation at a rate of $141.69 per week for sixty weeks for the injury sustained to plaintiff's neck. This amount has accrued and shall be paid in a lump sum subject to the attorney fee approved below.
3. Defendants shall pay to the plaintiff permanent disability compensation for plaintiff's injury to his brain, an internal organ, in the amount of $5,000. This amount shall be paid in a lump sum subject to the attorney fee approved below.
4. Defendants shall pay twenty-five percent of the amounts awarded in paragraphs 2, 3, and 4 above directly to counsel for the plaintiff.
5. Defendants shall pay for all medical treatment arising from this injury by accident to the extent that it tends to effect a cure, give relief and/or lessen plaintiff's disability.
6. Defendants shall pay an expert witness fee in the amount of $350.00 to Dr. Finkel and an expert witness fee in the amount of $240.00 to Dr. Friedman.
7. Defendants shall pay the costs.
* * * * * * * * * *
It is FURTHER ORDERED that this case shall be REMOVED from the Full Commission docket.
This the __________ day of __________________ 1996.
 S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
JHB/nwm 07/19/96